Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                        1:20-cv-06018

| | |
|---|---|
| Jeff Jones, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Complaint |
| Dietz & Watson, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Dietz & Watson, Inc. ("defendant") manufactures, distributes, markets, labels and sells sliced smoked provolone cheese ("Product") to consumers from retail and online stores of third-parties, in packaging of various sizes.

2.      The front label represents the Product is "Smoked Provolone Cheese" and described as "Piquant & Full Flavor."



3. Consumers rely on a food's principal display panel to quickly and accurately tell them the "common or usual name" of a food. 21 C.F.R. § 101.3(b)(2).

4. A food's name is required to "accurately identify or describe, in as simple and direct

terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a). 21 U.S.C. § 343(i).

5. Where a food makes any representations about its primary recognizable flavor, this is required to be disclosed together with the name of the food. 21 C.F.R. § 101.22(i)(1).

6. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[1]

7. The regulations for labeling a food's flavor tells consumers (1) if a food has flavor from the "real" thing, i.e., being smoked, (2) does the product contain added flavor *from* the named flavor, i.e., natural smoked flavor and (3) does the flavor come from artificial, synthetic sources, i.e., pyroligneous acid or artificial smoke flavor. 21 C.F.R. § 101.22(i); 21 C.F.R. § 101.22(h)(6).

8. These flavor regulations have established custom and practice so that consumers' experience primed them to infer from a product's labeling whether a flavor was entirely from the characterizing ingredients or not.

9. Most foods contain disclosures such as "naturally flavored," "other natural flavors" or "artificially flavored."

10. Consumers prefer foods that are flavored from a characterizing food ingredient or through a natural production process, as opposed to foods which are flavored by the essential oil and extractives that provide these qualities, for reasons including nutrition, health and the avoidance of additives and highly processed ingredients.[2]

---

[1] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[2] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

11. Smoking is a natural method of preparing and preserving food, through slow cooking over a fire of wood chips, which give different flavors to the food.

12. For example, hickory wood chips – from deciduous hardwood trees of the genus *Carya* – are often used for providing hearty yet sweet flavors to cheese and meat ("hickory").

13. Since the food is labeled as "Smoked Provolone Cheese," consumers expect it to get its smoked flavor from being smoked over wood chips.

14. However, the Product is misrepresented as "Smoked Provolone Cheese" because the listing of "Smoke Flavor" on the ingredient list means its flavor is not from actual smoking but from added flavor.

> **INGREDIENTS:** Cultured Pasteurized Milk, Salt, Enzymes, Smoke Flavor. **CONTAINS: MILK**

**INGREDIENTS:** Cultured Pasteurized Milk, Salt, Enzymes, Smoke Flavor.

15. The Product is misbranded and misleading because its label does not state the common or usual name of the food – "Natural Smoke Flavored Provolone Cheese" – in violation of the requirements of federal and state law. 21 U.S.C. § 343(i); 21 C.F.R. § 101.22(i)(1)(i).

16. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[3]

17. Smoked provolone that gets its smoked taste from being smoked is not a rare or pricy

---

[3] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.

4

delicacy that would make a reasonable consumer "double check" the veracity of the front label claims.

18. Because the front label contains no qualification such as flavor, flavored, natural smoke flavor, artificial smoke flavored, no reasonable consumer would be so distrustful or skeptical of the "Smoked Provolone Cheese" statement to scrutinize whether the ingredient list disclosed a "smoke flavor." *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

19. Even if consumers were to view the ingredient list, a reasonable consumer would have no reason to know that listing "smoke flavor" forecloses the possibility the Product was also subject to some smoking.

20. However, the Product has not undergone *any* real smoking, which is deceptive and misleading to consumers.

21. Consumers want real smoked flavor from smoking because they seek to avoid added flavors, since even "natural flavors" are highly processed in laboratories with additives, in contrast to simply being smoked over wood chips.

22. Defendant's branding, marketing and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

23. The amount and presence of real smoked flavor from smoking is material to plaintiff and consumers.

24. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

25. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

26. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

27. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $6.79 per 8 OZ compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

28. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

29. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

30. Plaintiff Jeff Jones is a citizen of New York.

31. Defendant Dietz & Watson, Inc. is a New Jersey corporation with a principal place of business in Philadelphia, Philadelphia County, Pennsylvania and a citizen of Pennsylvania.

32. "Minimal diversity" exists because plaintiff Jeff Jones and defendant are citizens of different states.

33. Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

34. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District.

35. Plaintiff purchased the Product on numerous occasions including but not limited to between October and November 2020, at stores including Stop & Shop, 625 Atlantic Ave,

6

Brooklyn, NY 11217.

36. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon its front label representations.

37. Plaintiff was deceived by and relied upon the Product's deceptive labeling and marketing.

38. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would have paid less for it.

39. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components and attributes.

## Class Allegations

40. The classes will consist of all purchasers of the Product who reside in New York and all forty-nine (49) other states during the applicable statutes of limitations.

41. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

42. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

43. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

44. Plaintiff is an adequate representative because his interests do not conflict with other members.

45. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

46. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

47. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

48. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350<br>(Consumer Protection Statutes)

49. Plaintiff incorporates by reference all preceding paragraphs.

50. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers.

51. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

52. Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or nutritional attributes of the Product.

53. The Product's purported smoking over wood chips had a material bearing on price and consumer acceptance of the Product.

54. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

55. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Defendant had a duty to disclose the amount and presence of the characterizing ingredient – *added* smoke flavor – on the front label as part of the Product's name, to not mislead

consumers who do not scrutinize the ingredient list.

58. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

59. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

60. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

61. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

62. Plaintiff incorporates by reference all preceding paragraphs.

63. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, organoleptic, nutritional, and/or compositional attributes it did not.

64. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

65. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

66. Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

67. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding

the Product or those of the type described here.

68. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiffs expected a product that was described by Defendant.

69. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Defendant's fraudulent intent is evinced by its failure to accurately represent the Product on the front label, when it knew its statements were neither true nor accurate and misled consumers.

72. Defendant was motivated by increasing its market share against competitor products.

73. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the

    undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages under the GBL and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: December 9, 2020

                                                                                  Respectfully submitted,

                                                                                  Sheehan & Associates, P.C.
                                                                                  /s/Spencer Sheehan
                                                                                  Spencer Sheehan
                                                                                  60 Cuttermill Rd Ste 409
                                                                                  Great Neck NY 11021-3104
                                                                                  Tel: (516) 268-7080
                                                                                  Fax: (516) 234-7800
                                                                                  *spencer@spencersheehan.com*
                                                                                  E.D.N.Y. # SS-8533
                                                                                  S.D.N.Y. # SS-2056

1:20-cv-06018
United States District Court
Eastern District of New York

Jeff Jones, individually and on behalf of all others similarly situated,

                            Plaintiff,

    - against -

Dietz & Watson, Inc.,

                            Defendant

## Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 9, 2020

                                                            /s/ Spencer Sheehan
                                                               Spencer Sheehan